30 So.2d 484

**WEATHERLY v. STATE.**

**4 Div. 7.**

Court of Appeals of Alabama.

May 6, 1947.

J. Hubert Farmer and Alto V. Lee, III, both of Dothan, and Richard T. Rives, of Montgomery, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Under facts, as disclosed by the evidence adduced upon the trial of this case in the court below, the first count was improper and should have been incorporated in the indictment. The trial court so held, and gave the affirmative charge as to said count.

The foregoing action of the court left one count remaining in the indictment. Count 2 as therein designated. The trial was had upon said count, which reads as follows: "The grand jury of said county further charge that, before the finding of this indictment, E. N. Byrd and Hugh Weatherly, whose names are to the grand jury otherwise unknown, knowingly, wilfully and without the consent of the owner thereof, entered into the dwelling house of Charles H. Grant and removed an electric fixture, to-wit, one electric water heater, which had been attached to and was a part

of said dwelling house, of the value of $68.50, the property of the said Charles H. Grant, with the intent to convert it to their own use against the peace and dignity of the State of Alabama."

Before entering upon the trial a severance was demanded, and granted. Defendant, Hugh Weatherly, was first put to trial. He interposed his plea of not guilty as charged in the indictment. The trial resulted in the conviction of defendant, and the court sentenced him to imprisonment in the penitentiary for the term of two years. From the judgment of conviction this appeal was taken.

█ The defendant's plea of not guilty, put in issue every material averment contained in the indictment, and the State was under the burden to prove, by the required rule of evidence, every such averment in the indictment. As stated in 1 Greenl. Evidence, Sec. 63, "In civil, and criminal cases, the substance of the issue must be proved; and any departure in the evidence from the substance is a fatal variance."

The indictment charged that the building entered was the dwelling house of Charles H. Grant. In refutation of this material averment it is insisted (1) the building in question, under the law, was not a dwelling house; and (2) that said building was not the property of the alleged injured party, Charles H. Grant.

█ As to insistence (1) the evidence, without dispute or conflict, tended to show that the house in question was intended to be used as a dwelling house when completed. At the time of the occurrence complained of it, the house, was still in the course of construction, and was not completed. It, of course, had never been, or could it have been occupied by any one as a dwelling, certainly not by Grant as alleged in the indictment.

In the case of Davis v. State, 153 Ala. 48, 44 So. 1018, 127 Am.St.Rep. 17, 15 Ann. Cas. 547, our Supreme Court has definitely decided this question under discussion. The court said: "A structure intended for a dwelling house when completed, but which was not completed and has never been occupied, is not a dwelling house within the meaning of the statute * * *."

In said case the court further stated: "Such a structure is not a dwelling house, within the meaning of the statute. Consequently the defendant could not be convicted under said indictment. The general charge, requested by the defendant, should have been given."

██ As to the second inquiry, (2) above referred to, the evidence was also without dispute or conflict to the effect that the house in question was being erected by defendant's witness, Dr. J. L. Bracewell, on his own lot. We here quote from the transcript the pertinent portion of Dr. Bracewell's testimony:

"Direct Examination, By Mr. J. H. Farmer:

"Q. Your name is Dr. J. L. Bracewell? A. Yes, sir.

"Q. You know Mr. Grant and you know Mr. Weatherly? A. Yes, sir.

"Q. Dr. Bracewell, you remember something about the occasion when they had some contention or misunderstanding about an electric water heater out at a house in the western part of town? A. Yes, sir.

"Q. Dr. Bracewell, with reference to that date, June 27, 1946, I will ask you if you had deeded that property to Mr. Grant at the time? A. The deed had not been made. I had a binder on the property at that time. I had a binder on it but it had not been delivered.

"Q. It had not been delivered. There had been no deed executed or delivered? Had you put him in possession of it at that time? A. He wasn't in possession of it at that time.

"Q. You had not executed him a deed and you had not put him in possession? A. I don't remember the date of the deed but I know he hadn't moved in. We were still in possession of it.

"Q. The house had not been turned over to him? A. No, sir."

The admitted facts as to the transaction between Grant, and the owner Dr. Bracewell, created the relation between these parties of vendor and vendee, and as was held in the case of Gravlee v. Williams, 112 Ala. 539, 543, 20 So. 952, 953, Grant, the vendee, acquired only an imperfect

equity in said property: In said case the Supreme Court said:

"The relation of the vendor and the vendee of lands, the vendor covenanting to convey title on the full payment of the purchase money, has been of frequent definition. Until the purchase money is fully paid, the vendee has but an imperfect equity. The vendor has the legal estate, and, in courts of law, is regarded as having the right to and in the lands,—the sole exclusive right. * * *

"Whatever may be the varied meanings of which the word 'owner' is capable, and whatever may have been the signification attached when employed in other connections, or in reference to other subject-matters, in this statute it is limited to the owner of the legal estate in lands. This is its precise meaning, and it would be an unwarrantable interpretation, violative of the cardinal rule that penal statutes are to be strictly construed, if it were extended so as to comprehend one who has but an equity, of which courts of law cannot take cognizance."

The pertinent portion of the Statute, Sec. 331, Title 14, Code of Alabama 1940, upon which the defendant was tried, reads as follows: " * * * and any person who knowingly, wilfully and without the consent of the owner thereof, enters into any dwelling house, store house, warehouse or other building or structure and cuts, breaks, tears out, removes any plumbing fixtures, lead pipe, copper, lock, grate, mantel, light, fixtures or other material which has been attached to and is a part of such building, the value of which was five dollars or more to the owner before being detached from such house or structure, with the intent to convert it to his own use, shall be guilty of grand larceny, and, on conviction, shall be imprisoned in the penitentiary for not less than one nor more than ten years."

It is manifest that the foregoing Statute, as well as our Statutes affording civil penalties, is for the protection of the freehold. And in Gravlee v. Williams, supra, Chief Justice Brickell for the court said: "The statute is intended for the protection of the freehold from spoliation or destruction; from that which at common law would be deemed waste. The remedy is given exclusively to the owner of the freehold, and he may pursue it, though he may not have the possession."

In order that the trial of this case may be fully understood we here incorporate the "Statement of Facts," contained in appellant's brief, which appears to be fully sustained by the record.

"Appellant, Hugh Weatherly, owned and operated the Dothan Plumbing Company in Dothan, Alabama, on June 27th, 1946, and prior thereto, Appellant sold Charles H. Grant, one of the prosecuting witnesses, a hot water heater for $120.00 installed. Said hot water heater so sold by Appellant to the said Charles H. Grant was installed by Appellant at 107 Westmont Drive, Dothan, Alabama. At the time of said sale and at the time of the installation of said hot water heater, (and at the time of the subsequent removal of said hot water heater, as will be more specifically hereinafter set forth) Dr. J. L. Bracewell, also of Dothan, Alabama, was constructing a house at 107 Westmont Drive, which was later sold to the witness Charles H. Grant. Grant became dissatisfied with the sale of said heater and demanded of Appellant a refund of a portion of the purchase price paid therefor. On June 27th, 1946, E. N. Byrd, who was at that time an employee of Appellant, had a conversation with Grant, the substance of which was materially in dispute. Grant testified that he demanded a refund on the purchase price of said heater, but did not agree for it to be removed upon Appellant's refunding him the entire purchase price. Byrd testified that he informed Grant that if he (Grant) was dissatisfied with the sale of said heater that Appellant would remove same from 107 Westmont Drive and refund Grant the entire purchase price, to which Grant did not reply. Byrd further testified that he so informed Appellant, and further that Grant had agreed for the removal of the said heater upon the refunding of said purchase price.

"Subsequent to said conversation between the said Grant and Byrd, Byrd returned to Appellant's place of business and advised Appellant of his conversation with Grant.

Appellant then conferred with J. Hubert Farmer, his Attorney, and directed the removal of said heater by two other employees of his at that time, namely: Roy McCord and C. D. Ard. Appellant further mailed to Grant by Registered Mail on said date a check for $120.00, the amount of the purchase price of said heater. Under the instructions received the said McCord and Ard proceeded to 107 Westmont Drive and removed said heater, Appellant joining them there after said heater had been removed and placed upon a truck. McCord and Ard were let into said house by one Barton, building foreman for Dr. J. L. Bracewell, the then owner of said property. From the testimony of the witness Grant, it further developed that both he and Barton, at that time, had a key to said property, although, Grant had not been delivered a deed thereto. It was shown by Dr. Bracewell that he had not given any key to Grant, and that he knew nothing about a key having been given to him; that he had not discussed it with Barton, and that Barton had not told him that he had given Grant a key. It further developed from said testimony that Grant was not present at the time said heater was removed, but that he went to 107 Westmont Drive at approximately 5:15 on the afternoon of June 27th, 1946, and at the time of his arrival said heater had been removed. On said June 27th, 1946, Charles H. Grant had made a deposit upon said property, but had not acquired a deed or other legal title thereto. Subsequent to the removal of the said heater, Dr. J. L. Bracewell delivered him a deed to said property and placed him in the possession thereof. It was not until after the removal of the said heater that said property was occupied by the said Charles H. Grant or any one else, and during this entire time it was still under construction and carpenters were working thereon. As to what extent it had been completed is not clearly established by the evidence in this case, but that it was still under construction and unoccupied is clearly established.

'Grant refused to accept the refund of the purchase price and instituted detinue proceedings for the recovery of the heater, as well as the prosecution of Appellant, as is herein reflected.'

We are unable to accord to the insistence of the Attorney General, representing the State, to the effect that a certain averment in the indictment was immaterial, hence should be disregarded; for the law is, as has been universally held, if an indictment contains an unnecessary averment, yet being alleged, it becomes necessary for the State to prove it, and there could be no conviction without such proof. Gilmore v. State, 99 Ala. 154, 13 So. 536, 537. In said case our Supreme Court said: "The indictment, which is for burglary of a dwellinghouse, contains the unnecessary averment that goods or clothing—things of value—were kept in the house for use, sale, or deposit. This averment is clearly one descriptive of the house, and, though unnecessary to be alleged, yet, being alleged, it became necessary for the state to prove it. There could be no conviction without such proof. Our adjudications are all one way on this point."

The State, on this point, relies solely upon our case of Matthews v. State, 15 Ala. App. 670, 74 So. 759, 761. As we read this case we regard it as direct authority for what has been here said. In that case the court said: "It is contended that even if the word 'dwelling' as used in the indictment in this case, is mere surplusage and an unnecessary averment, still it imposed upon the state an additional burden of proof to meet this allegation, etc. This may be true; but we are of the opinion that this additional burden of proof has been fully met by the uncontradicted evidence in this case; the witness Mrs. A. I. Donald, when recalled by the defendant, having testified: 'That the house was the property of her sister, Mrs. T. C. Johnson; that it was known as a dwelling house and had been built for that purpose, and had been occupied since October 1, 1915 (about two months after the alleged offense), until the time of the trial in the lower court as a dwelling house.' It would appear that there is no merit in this contention, the proof made having fully met each and every averment in the indictment."

There are several other insistences of error presented; such as several rulings

of the court upon the admission of the evidence. There may also be merit in some of these insistences. We, however, see no good purpose in discussing in detail the several other questions, for in our opinion what has been said is conclusive of this appeal, and also conclusive of this prosecution.

The questions hereinabove discussed and decided, were duly reserved by exceptions to the court's rulings. We are of the opinion that reversible error prevailed by the action of the court in refusing to defendant the several requested written charges. Also reversible error in the overruling and denying defendant's motion for a new trial.

It is apparent from the transcript that every available witness to the transaction complained of, was present and testified at the trial in the court below. We hold that this judgment was contrary to law, and against the great weight and preponderance of the evidence, which was insufficient to support the judgment of conviction. Courts will not do a useless thing; and from our viewpoint it would be a useless undertaking to remand this case to the court below for another trial. It is, therefore, ordered and adjudged, that the judgment of conviction, from which this appeal was taken be reversed, and a judgment here rendered discharging appellant from further custody in this proceeding. Robison v. State, 30 Ala.App. 12, 200 So. 626, certiorari denied 240 Ala. 638, 200 So. 629.

Reversed and rendered.