[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 995 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 996 
The appellant was convicted for buying, receiving or concealing one G.E. Weathertron 5 ton capacity heat pump valued at $1,162.00. Sentence was fixed by the trial court at five years imprisonment in the state penitentiary. Oral notice of appeal was given, and although appellant was declared indigent, his trial counsel agreed to remain his attorney of record and to represent him on appeal without charge. The several issues presented for review are complex and require a detailed delineation of the facts. Two trials were begun in this matter, the second resulting in this appeal. We shall consider the facts and issues of the two trials separately so far as they are pertinent to this appeal to facilitate understanding.
Appellant was first indicted by the Cullman County Grand Jury on January 10, 1978. He was charged in a two-count indictment with grand larceny and with buying, receiving, or concealing "one General Electric Weathertron 5 ton capacity heat pump, beige in color, Model No. BGWA860RLB, Serial No. 301913640, of the value of $1,162.00, the personal property of The Schaefer Company, Inc., a corporation, against the peace and dignity of the State of Alabama." Grand Larceny was charged in Count I while buying, receiving or concealing the same heat pump was charged in Count II.
The first trial of this cause was commenced on May 22, 1978, after appellant had been duly arraigned and had pleaded not guilty to the charges. Three state witnesses testified at appellant's first trial before the proceedings were terminated. Their testimony is summarized below.
Bob Waldrop, the vice president of The Schaefer Company, Inc., testified that on June 21, 1977, his company was in the process of installing two G.E. Weathertron 5 ton capacity heat pumps at a Mormon Church. The heat pumps were owned by Schaefer Company, Inc. The model number on one of the heat pumps was BGWA860RLB and its serial number was 301913640. The serial number was on the unit when it was taken to the church for installation; however, Mr. Waldrop stated that, upon examining the recovered unit, he discovered that the serial number had been removed.
Detective Javon Daniel of the Cullman Police Department had previously testified that the recovered unit had been located at Alvin Alexander's farm on Brushy Pond Mountain in Cullman County on August 26, 1977. The heat pump was found in a barn and was covered by a tarpaulin. Detective Daniel stated that the heat pump had been *Page 997 
in the barn approximately two months. It was transported to the Cullman Police Department and, after certain connecting parts were removed for comparison studies, was subsequently released to the Schaefer Company.
Brent Wheeler, a criminalist in the State Department of Toxicology, had also previously testified that the connecting parts removed from the recovered heat pump matched one set of the connecting parts which were left severed at the church site. The connecting parts consisted of 3/4 inch and 1/2 inch Sealtite flexible electrical conduits, and 7/8 inch and 3/8 inch copper pipes. It was Mr. Wheeler's opinion that the connecting wires and pipes had been cut in two with a hacksaw so that the heat pumps could be taken from their base at the Mormon Church.
The problem that developed during appellant's first trial on this matter centered itself on the missing serial number on the unit recovered at Alvin Alexander's farm. Because the serial number had been removed, Mr. Waldrop was unable to verify which of the two stolen heat pumps had been recovered. The recovered unit might have had serial number 301913640 as per indictment, or it might have had a different serial number. Put another way, serial number 301913640 may have belonged to the unit that was never recovered, and which was not the subject of the indictment.
The district attorney requested the appellant to consent to an amendment of the indictment by simply striking out the serial number to eliminate any variance of proof, but the appellant refused. The district attorney then moved the trial court to dismiss the prosecution by authority of Alabama Code 1975, §15-8-90 and 15-8-91. The trial court granted the motion. The appellant contends this ruling was erroneous because there was nomaterial variance between the allegation and proof. He further maintained that the ruling placed him in double jeopardy when he was re-indicted. These arguments are not valid.
The 1975 Code of Alabama Section 15-8-90 reads as follows:
 "An indictment may be amended, with the consent of the defendant entered of record, when the name of the defendant is incorrectly stated or when any person, property or matter therein stated is incorrectly described." (Emphasis added).
Section 15-8-91 of the Code, which must be read in conjunction with the preceding sections, reads in pertinent part:
 "If the defendant will not consent to such amendment of an indictment, the prosecution may be dismissed at any time before the jury retires as to the count in the indictment to which the variance applies, and the court may order another indictment to be preferred at a subsequent time. . . ."
Unquestionably, there was a variance between the indictment and the proof offered. Although the state did prove that the recovered heat pump was a General Electric Weathertron 5 ton capacity unit, that The Schaefer Company owned it and that it was one of the two heat pumps stolen at the Mormon Church, it was impossible to prove that the unit's serial number was 301913640. The recovered unit simply had no serial number on it. As stated previously, serial number 301913640 may well have belonged to the unit that was never recovered. Due to this lack of certainty as to the true serial number on the recovered unit it may properly be said that the property was incorrectly described in the indictment. Sections 15-8-90 and 15-8-91 of the 1975 Code were specifically designed to remedy incorrect descriptions of property.
It should be pointed out that Section 15-8-91 of the 1975 Code does not require a material variance to exist in the indictment as the appellant suggests. "Variance" in Section 15-8-91 refers to "when the name of the defendant is incorrectly stated or when any person, property or matter (in the indictment) is incorrectly described," as per Section 15-8-90. The variance we are concerned with here is incorrectly described property. *Page 998 
The first indictment specified serial number 301913640. It was uncertain whether the recovered heat pump, in fact, had that serial number. Even though it was unnecessary for the state to prove the serial number to establish a prima facie case of grand larceny or buying, receiving, or concealing, the law is settled that if an indictment contains an unnecessary averment, nonetheless it becomes necessary for the state to prove it, and there can be no conviction without such proof. Gilmore v. State,99 Ala. 154, 13 So. 536; Weatherly v. State, 33 Ala. App. 127,30 So.2d 484. Stated another way, where a particular kind of property is specifically described in an indictment, it must be proved as laid. Bell v. State, Ala.Cr.App., 364 So.2d 420, cert. denied Ala., 364 So.2d 424; Lee v. State, 20 Ala. App. 334,101 So. 907, cert. denied, 212 Ala. 135, 101 So. 909. Under the foregoing authority it would have been incumbent upon the state to prove that the serial number on the recovered unit was that specified in the indictment. Since the appellant would not consent to an amendment to the indictment, the state was placed in the position of not being able to prove a prima facie case without the incorporation of Section 15-8-91, Code 1975.
We note that the appellant's second indictment in this matter, which was handed down by the Cullman County Grand Jury on August 7, 1978, and under which he now stands convicted, does not add any new substantive offense which he was required to defend. The second indictment simply eliminates the serial number from consideration and slightly modifies the model number and spelling of the company name, "Schaefer." Count II of the second indictment reads in pertinent part:
 "The Grand Jury of said County charge that before the finding of this Indictment, Floyd Leldon Collins, alias `Porky', whose name is otherwise unknown to the Grand Jury, did buy, receive, conceal or aid in concealing one G.E. Weathertron 5 ton capacity heat pump, beige in color, Model No. BGWA860RLB, a further and better description of which is otherwise unknown to the Grand Jury, of the value of $1,162.00, and one G.E. Weathertron 5 ton capacity heat pump, beige in color, Model No. BGWA860RLB, of the value of $2,324.00, the personal property of the Schaefer Company, Inc., a corporation, knowing that it was stolen, or having reasonable grounds for believing that it has been stolen, and not having the intent to restore it to the owner, against the peace and dignity of the State of Alabama."
On its face, if the facts which are alleged in this indictment were proved at appellant's May 22 trial, no conviction would have been warranted on the first indictment. The test establishing variance is thus complete. Wright v. State, 40 Ala. App. 683,122 So.2d 555; Mitchell v. State, 16 Ala. App. 635, 80 So. 730. We hold therefore, that the trial court's reliance on Section15-8-90 and Section 15-8-91, 1975 Code, was, in all respects, proper.
The dismissal does not prevent appellant being tried on a new indictment conforming to the case made by the evidence. The accused is held to have never been in jeopardy since the crime charged is not the same in the sense that it is not sustainable by the same proof as in the former indictment. Oliver v. State,234 Ala. 460, 175 So. 305; Wright, supra. When a variance exists between the proof and the offense charged in the first indictment, the trial court is fully authorized under § 15-8-91
of the 1975 Code in dismissing the prosecution and ordering the appellant held for the grand jury to prefer a new indictment. Such proceedings furnish no ground for a plea of former jeopardy.Wright, supra.
The appellant next argues that his second trial on this matter, which commenced on March 19, 1979, in effect, denied him a speedy trial guaranteed by the Sixth Amendment of the United States Constitution. The appellant filed a motion to dismiss for want of prosecution in the case at bar on February 14, 1979. A hearing was heard the same day and it was learned that Alvin Alexander, one of the state's material *Page 999 
witnesses, was avoiding service of process. The court denied the motion with the understanding that the case would be dismissed if the state could not locate Mr. Alexander before the next docket call on March 19. Mr. Alexander was found and the trial commenced.
A hearing had previously been held on October 5, 1978, which concerned the appellant's involvement in the burglary and buying, receiving or concealing of a coal trailer truck. It was learned during this hearing, which is a part of the present record, that the appellant had been charged in four separate cases, including the coal truck and the case at bar. As to the other two cases, one had been dismissed and the remaining case, which also involved buying, receiving, concealing stolen property, had resulted in a five year sentence which was affirmed without formal opinion by this court.[1]
The October 5th hearing also revealed that the Tommy Lee Hines[2]
trial was in progress at the Cullman County Courthouse at this time. Security precautions required forty to fifty state troopers to constantly guard every floor. The trial court was of the well founded opinion that a trial of any of the pending cases against the appellant at that time would be to his disadvantage.
The record also contains a court order which discloses that the appellant himself requested two continuances in the present case. In one motion appellant's attorney advised the court he was in federal court on one of the dates earlier set for trial, and in the second motion appellant's attorney claimed surprise and lack of preparation. These two requests for continuances were granted.
In considering the appellant's argument, we have examined and balanced the four factors set out by the Supreme Court in Barkerv. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Those factors are listed as length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192. When the evidence before us is weighed with the four factors detailed inBarker it becomes apparent that appellant's second trial did not commence after an unreasonable time lapse from appellant's first trial on May 22, 1978; that valid and perhaps compelling reasons existed which justified that expiration of time; that the appellant did not formally assert his right to a speedy trial in this particular case until little more than one month before the second trial commenced; and that the expiration of time which did occur, all factors considered, could not possibly have prejudiced the appellant's right to a fair trial. Under the existing circumstances it is difficult to understand how appellant's trial could have been held any sooner. Appellant's speedy trial argument is therefore rejected.
After voir dire of the prospective jurors, appellant challenged for cause Juror Susan W. Robertson, an employee in the circuit court clerk's office of Cullman County. Appellant maintained that, as Mrs. Robertson had access to the clerk's files, she would have knowledge of the previous cases against him and "would not be expected to be unbiased."
Thorough questioning by the trial judge revealed that Mrs. Robertson was aware that appellant had a file in the clerk's office, but that she did not know "anything about it," nor did she know appellant personally. Mrs. Robertson was generally unfamiliar with the criminal records in the office. "I just issue the subpoenas." She had never issued subpoenas in any cases involving appellant other than the present one, and was unaware of any prior appeal to the appellate courts. Furthermore, Mrs. Robertson had never heard any discussion concerning appellant's records from the circuit court clerk. Based on this evidence the trial court denied appellant's challenge for cause.
While the statutory grounds enumerated in Alabama Code 1975, § *Page 1000 12-16-150 for challenges of jurors for cause are not exclusive, there must be some ground which indicates probable prejudice for a prospective juror to be disqualified. Motes v. State, Ala.Cr.App., 356 So.2d 712, 718. Qualification of a juror is a matter within the discretion of the trial court and, on appeal, this court will look to the questions propounded and to the answer given by the prospective juror to see if this discretion was properly exercised. Alabama Power Co. v. Henderson, Ala.,342 So.2d 323, 327. The trial judge here was satisfied that there was no cause to disqualify Mrs. Robertson for probable prejudice. The trial court's decision on such questions is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion. We find that the trial court exercised its discretion prudently.
During the district attorney's opening statement the following occurred:
 "Mr. Chamblee (Defense Counsel): Objection. Take an exception.
 "Mr. Bland (District Attorney): We expect to show that as evidence.
 "Mr. Chamblee: May we document the record as to what Mr. Bland's remarks were to the Jury. Just made the reference as I understand it, if I may state it, unless Mr. Bland can state it.
"The Court: Go ahead.
 "Mr. Chamblee: Was to the effect that they expected the evidence to show that Mr. Floyd Collins, the Defendant, has not explained his possession of these goods to which he is talking about.
"We except. We say that that is improper.
 "The Court: You except and say it is improper on what basis?
 "Mr. Chamblee: On the grounds that it invades the Constitutional rights of the Defendant. And I would further reserve the statement to the Court, if I may, outside the presence of the Jury on that point? All right.
"The Court: Go ahead."
* * * * * *
The state then called its first witness and during recess, before the witness had finished testifying, the following occurred outside the presence of the jury:
 "Mr. Chamblee: [W]e would show to the Court that these remarks calculated and did, invade the right of the Defendant to remain silent and not to testify — not to be required to testify against himself. . . . [W]e would at this time move the Court for a mistrial on those grounds. "The Court: That is in regard to the remarks that you made with regard to the Defendant not having explained possession of these goods. Said Mr. Alexander stated that he had got them.
"Mr. Bland: Would testify.
 "The Court: That he got them from Mr. Collins and that Mr. Collins had not satisfactorily explained his possession of the goods.
 "Mr. Bland: That we intended to prove that proof whether he takes the stand or not."
The trial court then informed the appellant's counsel that he intended to instruct the jury fully in his oral charge concerning the state's burden of proof and the accused's right to remain silent, but "I will be happy to give the Jury some instructions now on those points, if you want to request it?" Appellant's counsel rejected this offer. "I feel like, Your Honor, that that would further spotlight the error and make it more damaging to the Defendant." In light of this response, the trial court, based on its belief that its oral instructions could eradicate any prejudice to the appellant, denied appellant's motion for a mistrial. We note that the trial judge did, in his oral charge, admonish the jury to draw no inference from appellant's failure to testify.
The remark made by the district attorney constituted either a direct or indirect comment adverse to appellant's right to remain silent. If it was the appellant himself who had "not explained his possession of these goods", the remark was a direct reference to his failure to testify. On the other hand, if it was Mr. Alexander who stated that appellant "had not satisfactorily *Page 1001 
explained (to Mr. Alexander) his possession of the goods", the remark was an indirect reference. We need not decide whether the comment was direct or indirect. "[I]t is concomitantly the duty of the prosecutor not to, in any manner, comment on the failure of the defendant to testify." Beecher v. State, 294 Ala. 674,320 So.2d 727, 734. (Emphasis added).
Under the Fifth Amendment to the United States Constitution and Article I, Section 6 of the Alabama Constitution of 1901, no person shall be compelled in any criminal case to be a witness against himself. Furthermore, Alabama Code 1975, § 12-21-220
provides:
 "On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. . . ."
Comments on a defendant's failure to testify have been condemned time and time again by this court and by the Alabama Supreme Court. Beecher, supra; Qualls v. State, Ala.Cr.App.,371 So.2d 949, cert. denied, Ala., 371 So.2d 951; Robinson v. State, Ala.Cr.App., 352 So.2d 11, cert. denied, Ala., 352 So.2d 15.
Moreover, impermissible comments by the district attorney on an accused's failure to testify need not be made only during closing arguments to work a reversal. Canada v. State, 22 Ala. App. 495,117 So. 398. Neither the Alabama or the United States Constitution, nor Alabama Code 1975, § 12-21-220, are so limiting. At least one Alabama case, Johnson v. State,[3]
Ala.Cr.App., 353 So.2d 62, has held that such remarks by a district attorney during opening statement is error.
It does not matter that during the opening statement the accused has or has not taken the stand, his constitutional right to remain silent may still be violated. The argument that no harm can be ascertained from remarks indifferent to that right until closing arguments, after the accused has elected not to testify is ill conceived and ill thought out. Certainly, we would be remiss in our duty if we failed to recognize the danger of the district attorney, early in the proceedings, directly or indirectly focusing the jury's attention on what the accused will or will not testify to, or on what he previously has or has not admitted. In many instances, if this tactic were allowed, the prejudice to the accused would be even greater than if the comment were made after all the testimony had been taken. If permitted, the jury would be on their constant guard, anticipating the accused's "chance to tell his story." This form of prejudice to an accused's right to receive a fair trial will not be sanctioned or tolerated by this court. An accused's right to remain silent is inviolable at every stage in the proceedings and must be afforded due protection.
To cause an absolute reversal, the court must be persuaded the remark was so grossly improper and highly prejudicial as to have been ineradicable. Arant v. State, 232 Ala. 275, 167 So. 540;Bachelor v. State, 216 Ala. 356, 113 So. 67. In our opinion the statement here referred to does not meet that qualification as it could have been removed or eradicated from the realm of jury consideration.
The issue we must now decide is since the statement could have been eradicated, but was not, did reversible error occur. We recognize that, after defense counsel either objects to the improper comment or moves to have the remark excluded, it becomes "the duty of the judge not only to sustain said motion or objection, but also to exercise a reasonable degree of effort to eradicate its effect from the mind of the jury." Broadway v.State, 257 Ala. 414, 416, 60 So.2d 701, 702; Qualls, supra. And, further, the admonition to the jury to disregard *Page 1002 
such remarks must be strong and not merely perfunctory, and the trial court may err to reversal by saying too little to eradicate the damage. Qualls, supra; Lamberth v. State, 54 Ala. App. 233,235, 307 So.2d 43.
In the instant case the trial court in considering the objection did offer to give curative instructions. Had this offer not been made reversible error clearly would have occurred. However, appellant refused this offer on the theory it would "further spotlight the error." The trial court deferred to this request. While it was not incumbent upon appellant to choose whether curative instructions were to be given, that duty resting squarely upon the trial judge, a duty which he should not shirk, since he was given that choice and chose to refuse any corrective instructions, appellant may be said to have waived his original objection. "[A defendant] cannot by his own voluntary conduct invite error and then seek to profit thereby." Aldridge v. State,278 Ala. 470, 179 So.2d 51; "It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice." Aldridge, 278 Ala. at 474,179 So.2d at 54. We hold therefore, that in this case it was not error for the trial court, in deference to appellant's request, not to give immediate curative instructions.
Lest we be misunderstood, it is better practice that the accused not be given a choice whether such instructions should be given. The trial court should, ex mero motu, strictly admonish the jury to disregard any reference to an accused's failure to testify and, if necessary, poll the jury to ascertain if any juror has been biased or prejudiced by the district attorney's comment.
The foregoing preliminary questions having been decided, we now consider the facts that were elicited at appellant's second trial in this matter which commenced on March 19, 1979.
Bob Waldrop, vice-president of Schaefer Company, testified once more that on June 21, 1977, his company was in the process of installing two heat pumps at a Mormon Church in Cullman County. On June 22, he discovered that the units were missing from their concrete pads at the back of the church. No one had been given permission to take the heat pumps.
Mr. Waldrop explained that Schaefer Company was a subcontractor to Warnke Construction Company, the general contractor for the Mormon Church. Schaefer was responsible for the electrical and air conditioning installation at the church. Schaefer purchased the heat pumps from Air Engineers, Inc., and billed out their work on a percentage basis to Warnke as the work was completed. The day the heat pumps were stolen Schaefer had completed 98 percent of both the electrical and air conditioning installation. Mr. Waldrop testified that the heat pumps were owned and in the possession of Schaefer while they were being installed, not by Warnke or the church. "What we do, they pay us partially for these jobs as we buy materials and store them or either install them on the job. They never completely pay us for the job until it is completely finished and has been inspected by the architect and owner." Final payment for the church job was not received until January, 1978.
Mr. Waldrop stated that the two heat pumps were General Electric Weathertron five ton units, beige in color, with model numbers BGWA860RLB and valued at $1,162.00 each. When called by the Cullman Police Department to inspect the unit that was recovered, Mr. Waldrop testified he was 100 percent certain it was one of the stolen units by a touch up paint spot, even though the serial numbers had been removed.
The testimony of Javon Daniel and Brent Wheeler was essentially the same as it was in the earlier trial. We see no reason to repeat or further elaborate on that testimony here.
Alvin Alexander testified that he had known appellant as "Porky" for about twenty years and that "Porky", who was accompanied by Shirl Brown, "drove up" to his house on Saturday, June 26, 1977, and *Page 1003 
offered to sell him a heat pump. "I ask him if it was hot. And, he said, no, not from around here. And, I said, well, is it stolen and he said, no . . . I asked him again if it was hot or stolen you know, means the same thing. And, he said, no." Appellant told Alexander he wanted $800.00 for the unit, the deal was made around 3:00 p.m. and appellant, along with Brown, borrowed Alexander's truck "to go get it."
Alexander stated that appellant and Brown returned to his house at about 9:00 p.m. with the heat pump loaded on his pickup. "I left it parked in my back yard until Sunday. And, then, I carried it down and put it in the barn at the farm on Brushy Pond" and "covered it up with a tarpaulin. . . ." Alexander further testified that he had paid appellant $400.00 cash on the heat pump at the time it was "confiscated" by the police.
Shirl Brown testified that he, too, had known appellant as "Porky" all his life and had gone with him to Alvin Alexander's house. Brown stated he heard appellant ask Alexander if he wanted to buy a heat pump and that Alexander told him, yes. Brown then rode "[s]omewhere's out — Winston County" with appellant and loaded "an air conditioning thing" on Alexander's truck. They returned to Alexander's house around 8:00 or 9:00 at which time Brown saw Alexander give appellant some money.
During cross-examination, Brown stated that he started drinking beer early in the morning on the day he and appellant drove to Alvin Alexander's. By 3:00 or 4:00 that afternoon he was "pretty well drunk." Brown admitted that when he left with appellant to load the heat pump "[w]e was drinking going and coming back."
Jack Alexander, Alvin Alexander's son, testified that he owned part of the farm on Brushy Pond Mountain where the stolen unit was recovered. He stated that he had helped his father unload the unit at the barn. "My dad said he bought it from him (appellant)." Alexander became "enthused with the unit" and asked appellant about a week later if he had another one, "that I would like to purchase one if he had anymore." He then testified that appellant "said at that time that he didn't have any, but he had a possible chance that he could get me one."
The state then rested. Appellant moved to exclude the state's evidence on the grounds the state had not made out a prima facie case as to either Count I or Count II of the indictment; that the property in question, the heat pump, was a fixture and not personalty which is required for grand larceny or buying, receiving, or concealing; and that the testimony of Alvin Alexander, whom appellant contends was an accomplice, was not corroborated.
The trial court granted appellant's motion as to Count I, the grand larceny count, on the basis that at the time the heat pump was taken it was affixed to the real estate and was thus a fixture. However, the trial court denied appellant's motion as to Count II on the basis that if a fixture has been separated from realty for a period of time then it can be subject to the crime of buying, receiving or concealing stolen property.
The defense then rested without presenting any witnesses and appellant renewed the motion to exclude the evidence as to Count II on the theory that, if the heat pump was not personalty for the purpose of grand larceny, it could not acquire the status of personalty later for the crime of buying, receiving, or concealing. Appellant also renewed his argument that Alvin Alexander's testimony was uncorroborated. These motions were denied and, after closing arguments and the court's oral charge, the case was submitted to the jury.
Regarding the question as to whether the heat pump was a fixture, as opposed to personalty, the evidence reveals that a period of several days had elapsed from the time the unit was stolen until the time appellant became guilty of buying, receiving, or concealing the same. The unit was taken from the Mormon Church on June 21 or 22 and did not "show up" again until June 26 when appellant went "somewhere's out — Winston County" to retrieve it for Alvin Alexander. The record nowhere indicates *Page 1004 
who took the unit from the church or where it was taken, only that, in the intervening time until the unit was loaded onto Alexander's truck, the appellant had received the heat pump and had concealed it "somewhere's out — Winston County." There is no suggestion that in "one continuous act" the appellant stole the heat pump and concealed it until the time he sold it to Alvin Alexander. Indeed, an accused cannot be found guilty of both larceny and buying, receiving, or concealing stolen property; he is guilty, if at all, of either one offense or the other.Nicholson v. State, Ala.Cr.App., 369 So.2d 304; Davidson v.State, Ala.Cr.App., 360 So. 728, cert. denied, Ala.,360 So.2d 731.
The elements necessary to prove a prima facie case of buying, receiving, or concealing stolen goods are (1) that the goods in question had been feloniously taken and carried away by someone; (2) that the defendant bought, received, concealed, or aided in concealing the goods, knowing that they were stolen; and (3) that the defendant bought, received, concealed, or aided in concealing the goods without the intent to restore them to the owner. Walkerv. State, Ala.Cr.App., 355 So.2d 755, 757; Scott v. State,55 Ala. App. 318, 314 So.2d 921; Bills v. State, 49 Ala. App. 726,275 So.2d 706. Most of these elements are usually shown by circumstances from which the jury, using their everyday common sense and observation, must draw their conclusions. Walker, supra; Tyler v. State, 17 Ala. App. 495, 496, 86 So. 93. Scienter, or necessary knowledge and intent, may be inferred by the jury from the facts and circumstances of the entire transaction.Vacalis v. State, 204 Ala. 345, 86 So. 92; Walker, supra; Vinesv. State, 57 Ala. App. 117, 326 So.2d 307. If the heat pump was personal property at the time appellant had it concealed "somewhere's out — Winston County," we have no problem in deciding the state proved a prima facie case in accordance with the jury verdict.
It has been recognized that the subject of fixtures is one of great difficulty and that, when doubt arises as to whether or not a certain piece of property is a fixture, this doubt must be decided by the circumstances of each individual case. Langston v.State, 96 Ala. 55, 11 So. 334. Several rules were listed by the court in Langston for determining the character of a fixture. They are:
 "(1) Actual annexation to the realty or to something appurtenant thereto;
 (2) appropriateness to the use or purposes of that part of the realty with which it is connected;
 (3) the intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred (a) from the nature of the article annexed; (b) the relation of the party making the annexation; (c) the structure and mode of annexation; (d) the purposes and uses for which the annexation has been made."
Without question, based on the above rules, had appellant been caught "red-handed" stealing the heat pump, a conviction for grand larceny could not be sustained because the heat pump being 98 percent installed at the church would have been a fixture. SeeParker v. State, Ala.Cr.App., 352 So.2d 1386, cert. denied, Ala.,352 So.2d 1391.
However, this was not the case. Appellant was convicted of buying, receiving, or concealing stolen property. As previously stated, several days had elapsed from the time the heat pump was stolen until there was any evidence appellant was guilty of any crime at all. At the time the heat pump was "somewhere's out — Winston County" it was no longer attached to the church building. It had been "severed" for quite some time from the church and had lost its fixture characteristics as outlined in Langston, supra. The facts in this case closely parallel those in Fuller v. State,34 Ala. App. 211, 39 So.2d 34.
The theory that if property is a fixture at the time it is stolen it cannot at a subsequent time become personalty is erroneous. The property remains stolen until *Page 1005 
such time it is returned to its rightful owner; only its quality as a fixture or personalty changes, which is dependent solely on an indefinite intervening period of time. To require that an intervening actor steal the property from the original thief, after the property has lost its characteristics as a fixture, before the property can become subject to the crime of buying, receiving, or concealing stolen (personal) property by yet a third person would be unwarranted. We can find no precedent or logic which would support such a strange rule. Indeed, the holding in Fuller, supra, is contrary and we deem the reasoning there sound.
We hold, therefore, that the trial court was correct in granting appellant's motion to exclude the evidence pertaining to grand larceny, but conclude that at the time the heat pump was concealed "somewhere's out — Winston County" it was personalty. Thus, the jury determination of appellant's guilt as to buying, receiving, or concealing stolen property was justified.
Without belaboring the question as to whether or not Alvin Alexander was an accomplice as appellant suggests, based on the testimony of Shirl Brown and Jack Alexander, we may conclude that Alvin Alexander's testimony was sufficiently corroborated.Jacks v. State, Ala.Cr.App., 364 So.2d 397, cert. denied, Ala.,364 So.2d 406.
In addition to the arguments presented by the appellant we have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.
[1] Collins v. State, 6 Div. 768, [Ms. June 30, 1978].
[2] State of Alabama v. Tommy Lee Hines.
[3] In Johnson, supra, the error was cured by clear and immediate instructions to the jury to disregard the comments.