Jimmy Ray Smith was charged in a single indictment with two counts of robbery in the first degree, in violation of Ala. Code 1975, § 13A-8-41. A jury convicted him on each count of robbery in the third degree. Restitution was ordered and Smith was sentenced to ten years' imprisonment in each case (concurrent). This sentence was split and the defendant was ordered to serve two years' imprisonment. On this appeal from those convictions, Smith raises two issues.
 I
Smith contends that his motion to sever the two robberies should have been granted. The robberies occurred on February 8 and 17, 1988, and involved the Harris Mini Mart in Ozark and the Zippy Mart in Level Plains. We take judicial knowledge of the facts that those two towns are in the same county and are approximately 20 miles apart. Each robbery was committed in a similar fashion: The robber entered the store, pretended to purchase an item and, when the cash drawer was opened, grabbed only the dollar bills. In each instance, the robber, while holding one hand inside his pocket, threatened to shoot the cashier. The defense to each robbery was alibi. In each robbery, the defendant was positively identified by an eyewitness.
Because identity was a material issue, the evidence of one robbery would have *Page 1163 
been admissible at Smith's trial for the other robbery. C. Gamble, McElroy's Alabama Evidence § 70.01(24)(c) (3d ed. 1977). "Two or more offenses may be joined in an indictment . . . if they: (i) are of the same or similar character; or . . . (iii) are alleged to have been part of a common scheme or plan." Rule 15.3(a), A.R.Cr.P.Temp.
This argument is without merit. Additionally, the record does not show that the trial judge ever ruled on the motion to sever.
 II
Smith contends that there was a fatal variance because Count I of the indictment charged that one robbery was committed on January 17 and the evidence showed that it was committed on February 17. Count I of the indictment charged that, "before the finding of this indictment on or about January 17, 1988 one JIMMY RAY SMITH did, in the course of committing a theft of monies, the property of Crown Central Petroleum, . . . d/b/a Zippy Mart, threaten the imminent use of force against the person of Kalaya Bean, with the intent to compel acquiesence to the taking of or escaping with the property, while . . . armed with a deadly weapon, to-wit: a gun, . . ." The evidence showed that this robbery actually occurred on February 17, 1988.
The record shows that, after the jury had been selected and before any trial testimony had been taken, the following occurred outside the presence of the jury.
 "MR. EMERY [Assistant District Attorney]: Judge, we expect the evidence to show on Count One that the robbery took place on February 17th instead of January 17th.
 "MR. CORBITT [Assistant District Attorney]: The indictment shows January 17th and we expect the evidence to show that it is February 17th.
 "THE COURT: Is there a change in the other one or is that on the right date?
"MR. CORBITT: That's on the right date.
 "MR. KENNINGTON [Defense Counsel]: We would object to them amending the indictment at this point in time Your Honor.
 "MR. EMERY: We didn't offer to amend it. Our position is that isn't a fatal variance. It says 'on or about the 17th,' and puts the Defendant on notice of what he's charged with.
"MR. KENNINGTON: Your Honor, we'd —
 "THE COURT: They aren't moving to amend it. What they are saying is, if they offer proof of that, then I'll make a decision. I'm not suggesting now that I'm ruling ahead of time. I'll give you plenty enough time to come back and argue that it is a fatal variance and all this kind of stuff. He's just forewarning me of that fact.
"Okay, bring the Jury back in."
After the jury was recessed for the evening, the following occurred:
 "THE COURT: I want to know what you intend to do. I do not intend to start the trial of this case and then declare a mistrial and I can see some problems with it. You might consider two different things. I don't know whether this Defendant has alibi witnesses on January the 18th or not. And when you say it's on proper notice I'm not altogether certain it is on proper notice, especially in view of the fact that you have announced prior to trial that — You know, I realize that a variance may not be a fatal variance. On the other hand he has filed a motion to sever and I have denied it. And you might consider whether or not you want me to grant it, withdraw and file or come back or what. I don't know. But what I'm saying is I don't want to get into the trial of this case and have to declare a mistrial so make your decisions accordingly. And I'm not trying to suggest to either side what to do. So, with that make up your mind what you want to do and let me know in the morning.
 "MR. CORBITT: Judge, he's had full knowledge and discovery of all our files and all the evidence in the case, all the investigative reports show that it was just a typographical error on the indictment itself. All other information we've *Page 1164 
turned over to Mr. Kennington, all his discovery would show the 17th.
 "THE COURT: All right, you might want to think about it. I'm thinking in terms of the Defendant and not the defense counsel. I don't know if you do or don't. Don't argue it now but make up your minds and let me know."
During the prosecutor's opening remarks to the jury, the following occurred:
 "MR. CORBITT: . . . . On or about January 17th, 1988. All right, this indictment has a typographic error in it. Instead of January it should say February.
 "MR. KENNINGTON: Judge, I'm going to object to him amending the indictment here in the Opening Statement in that fashion. The indictment speaks for itself.
"THE COURT: Overrule your objection."
After the above, nothing was mentioned about the variance until the defendant made his oral motion for a judgment of acquittal at the close of the State's evidence. Despite the earlier subtle suggestion of the trial judge, defense counsel never requested either a continuance or a severance on the ground that he was not prepared to defend against the robbery on the date charged in the indictment.
The defendant first objected to this variance in his motion for a judgment of acquittal at the close of the State's evidence. The prosecutor replied, "Now there has been no objection prior to commencement of trial as to surprise or prejudice or as to this being a material variance. There's been no objection. The Jury was sworn, the Jury was empaneled. They knew about it prior to trial and trial has proceeded and there has been no objection until the close of the State's case. There's been no hint whatsoever of any prejudice or surprise by this slight variance here." Immediately before the trial judge denied his motion, defense counsel stated, "Judge, we are prejudiced by it in the sense that the Defendant can't be prepared to meet one or other date. Where they've set forth dates, we're prepared to defend on a certain date."
After that, the defendant took the witness stand in his own behalf and testified that, at the time of the robbery on February 17th, he was at his aunt's house with his wife and family. The defendant's wife and aunt also testified and corroborated his alibi defense and specifically testified to his whereabouts on February 17th.
In arguing that a fatal variance exists in this case, the defendant relies primarily upon the case of Thornton v. State,480 So.2d 34, 36 (Ala.Cr.App. 1985), where this court held that "if the state elects to prosecute a crime occurring at a particular time, then the state is entitled to a conviction only upon establishing that fact by evidence. H[o]rton v.State, 17 Ala. App. 189, 86 So. 241 [1919], cert. denied,204 Ala. 699, 86 So. 926 (1920)." In Thornton, a material variance was found to exist where the indictment charged that the crime occurred on or about November 1, 1982, and the evidence showed that the crime was committed in the summer of 1982.
We decline to follow the holding of Thornton in this case.Horton, cited as authority by Thornton, involved the "doctrine of election." In that case, the court held, "[t]he state having elected to prosecute the defendant for having possession of prohibited liquors at the time 'whiskey was found in the woodhouse,' [as opposed to the whiskey found in the defendant's room at the same time] would only be entitled to a conviction upon evidence establishing that fact." Horton,17 Ala. App. at 190, 86 So. at 241. It is not clear whether the "election" occurred at trial or whether the court was referring to the State's "election" of charging in the indictment the possession of certain whiskey found in a specific location.
However, opinions by the Alabama Supreme Court express principles contrary to that stated in Thornton. In Brown v.City of Tuscaloosa, 196 Ala. 475, 477, 71 So. 672, 673 (1916), it was stated:
 "It is, of course, true that time is not ordinarily material, and that a crime charged as of one date may be established by proof of its occurrence on another date. But in every case the crime *Page 1165 
proved must antedate the charge upon which the defendant is being tried; otherwise, not only is there a fatal variance, but also a complete absence of jurisdiction of the particular offense. In such a case evidence of the later offense is not admissible, and there can be no lawful conviction thereof."
In Brown, the evidence showed that the offense was committed after the date of the issuance of the warrant under which the accused was charged and tried.
In McDade v. State, 20 Ala. 81, 82 (1852), our Supreme Court stated:
 "The general rule requires the pleader to state some time when the offence was committed, within the period prescribed as a bar to the prosecution; but it is too well settled now to be questioned, that where the time is averred under a videlicet, the prosecutor is not held to proof of it as laid, but may prove that the offense was committed at any time before the finding of the indictment, and within the period prescribed as a bar."
In this case, the indictment alleged that the robbery occurred "on or about January 17, 1988." The phrase "on or about" is defined as: "A phrase used in reciting the date of an occurrence . . . to escape the necessity of being bound by the statement of an exact date, . . .; approximately; about; without substantial variance from; near." Black's LawDictionary 982 (rev. 5th ed. 1979).
In Pharr Beck v. Bachelor, 3 Ala. 237, 244 (1841), it was stated:
 "In an action upon a verbal contract, time is considered in general as forming no material part of the issue; it is therefore allowable for the pleader to assign one time to a given fact, and prove another. But to tolerate this discrepancy between the allegation and the proof, he should lay the time under a videlicet, and take care that he do not lay a time that is intrinsically impossible, or inconsistent with the fact to which it relates. Step. on Plead. 292; 2 Phil.Ev.C H. ed. 533. In the present case, the declaration states the time when the contract was made thus, 'heretofore, to wit: on the 9th day of July,' c. According to the law, as we have cited it, from very eminent elementary writers, this mode of pleading does not oblige the pleader to show, that the contract was made on the day alleged."
See also Carlisle v. Davis, 9 Ala. 858, 860 (1846) ("It is far better that time, when immaterial, shall not be the cause of demurrer, even when improperly stated, than that a mere error in this particular should cause delay or expense to the party"); Crawford v. Camfield, 6 Ala. 153, 154 (1844); Howardv. Ingersoll, 23 Ala. 673, 674 (1853) ("We say 'in legal effect,' because the place, 'in the State of Georgia,' in which the mill is averred to be located, is stated under a videlicet, the office of which is to mark that the party does not undertake to confine himself to the place thus laid.").
"It has been held too often to require more than a reference to one or two authorities, that the date of an alleged offense as stated in the indictment is not binding so as to limit the proof to that specific date; and that under an allegation like that in the indictment, the proof may fix the offense on any date within the bar of the Statute of Limitations."Winslett v. United States, 124 F.2d 302, 303 (5th Cir. 1942) (footnote omitted). "Generally, however, where time is not of the essence of the offense charged, the time need not be proved as laid in the indictment or information." 41 Am.Jur.2dIndictments and Informations, § 268 (1968).
The materiality or prejudicial effect of the variance was not considered in Thornton. "[O]ur Alabama case law is clear that there must be a material variance between indictment and proof before a conviction will be overturned for that reason." Exparte Collins, 385 So.2d 1005, 1009 (Ala. 1980). The general rule is that it is not necessary to state in an indictment the precise time an offense was committed. Ala. Code 1975, §15-8-30. "Time is not a material ingredient in a charge of robbery." Harris v. State, 44 Ala. App. 449, 452, 212 So.2d 695,699, cert. denied, 282 Ala. 726, 212 So.2d 704 (1968). *Page 1166 
In Collins v. State, 385 So.2d 993 (Ala.Cr.App. 1979), reversed, Ex parte Collins, 385 So.2d 1005 (Ala. 1980), the indictment specified the serial number of the stolen heat pump. At trial, the State was unable to prove the serial number. Taking a position similar to that taken in Thornton, this court held that the State failed to present a prima facie case and reversed the conviction:
 "The first indictment specified serial number 301913640. It was uncertain whether the recovered heat pump, in fact, had that serial number. Even though it was unnecessary for the state to prove the serial number to establish a prima facie case of grand larceny or buying, receiving, or concealing, the law is settled that if an indictment contains an unnecessary averment, nonetheless it becomes necessary for the state to prove it, and there can be no conviction without such proof. Gilmore v. State, 99 Ala. 154, 13 So. 536 [(1893)]; Weatherly v. State, 33 Ala. App. 127, 30 So.2d 484 [(1947)]. Stated another way, where a particular kind of property is specifically described in an indictment, it must be proved as laid. Bell v. State, Ala.Cr.App., 364 So.2d 420, cert. denied Ala., 364 So.2d 424 [(1978)]; Lee v. State, 20 Ala. App. 334, 101 So. 907, cert. denied, 212 Ala. 135, 101 So. 909 [(1924)]. Under the foregoing authority it would have been incumbent upon the state to prove that the serial number on the recovered unit was that specified in the indictment. Since the appellant would not consent to an amendment to the indictment, the state was placed in the position of not being able to prove a prima facie case without the incorporation of Section 15-8-91, Code 1975." Collins, 385 So.2d at 998.
In reversing that holding, the Alabama Supreme Court stated:
 "Thus, the Court of Criminal Appeals held that since the State could not prove the indictment as laid, any conviction based upon the indictment would fail.
"We are not so convinced.
". . . .
 "In the case at bar there was no manifest necessity for dismissing the prosecution. True, there was a variance between the indictment and proof. However, our Alabama case law is clear that there must be a material variance between indictment and proof before a conviction will be overturned for that reason. See e.g., House v. State, 380 So.2d 940 (Ala. 1979) (no material variance between indictment which charged defendant with assaulting Edward Wilburn, engaged 'in the active discharge of his lawful duty or duties as deputy sheriff for Morgan County, Alabama' and proof which showed that Wilburn was in fact engaged in his lawful duties as a jailer at the time of the assault), and Dailey v. State, 374 So.2d 414
(Ala.Cr.App. 1979) (no material variance between forgery indictment, in which number of check was described as '1881,' and proof that check was numbered '1886'). Since there was no material
variance between the indictment and proof in the case at bar, there was no manifest necessity for dismissing the proceedings." Collins, 385 So.2d at 1009.
In Lunceford v. City of Northport, [6 Div. 664, November 10, 1988] (Ala.Cr.App. 1988), this court found that there was no material variance between a complaint for driving under the influence of alcohol which charged that the defendant was "driving . . . upon a highway" and the evidence showing that he was driving in a private parking lot. In so holding, this court discussed the conflict in the case law of this state on the necessity of proving surplusage alleged in the indictment.
 "The words in the complaint 'on a public highway' describe the place where the alleged crime occurred and are surplusage. 'It is not necessary to allege in a complaint, or indictment, where the offense was committed. This is a matter of proof, and upon the trial of a case it must be proved that the offense complained of was committed within the jurisdiction of the court where the case is being tried.' Hammonds v. City of Tuscaloosa, 21 Ala. App. 286, 287, *Page 1167 107 So. 786 (1926). 'It is not necessary to allege where the offense was committed in an indictment.' § 15-8-31, Code of Alabama 1975. 'It is not necessary to state . . . the place where the offense is alleged to have been committed. Unnecessary allegations may be disregarded as surplusage, and on motion of the defendant shall be stricken by the court if prejudicial or unduly prolix.' Rule 15.2(d), A.R.Cr.P.Temp.
 "Even though the allegation of where the accused drove his vehicle constitutes unnecessary surplusage, there is authority that since it was alleged it must be proven. In Sexton v. State, 29 Ala. App. 336, 339, 196 So. 742, cert. denied, 239 Ala. 662, 196 So. 746 (1940), the appellate court reversed on another ground but noted 'in passing':
 " 'We might add, in passing, that, while the complaint upon which appellant was tried . . . carried the unnecessary allegation that the highway upon which appellant drove a motor vehicle 'while under the influence of liquor' was a public highway (Gen. and Local Acts Ala. Extra Session 1936-1937, p. 229), yet, the State having seen fit to allege that it was a public highway, should have been required — in order to secure a conviction of appellant — to prove it. Gilmore v. State, 99 Ala. 154, 13 So. 536
[(1893)].'
 "We do not consider Sexton dispositive of the issue now presented for two reasons. First, the observation in Sexton was dictum because it was not necessary to the decision in that case and is therefore not controlling as precedent. Roquemore v. Sovereign Camp, W.O.W., 226 Ala. 279, 282, 146 So. 619 (1933). Second, there is an apparent conflict in the case law of this state on the necessity of proving surplusage. There is authority that unnecessary allegations need not be proven. See Brown v. State, 30 Ala. App. 339, 343, 7 So.2d 24 (1941), cert. denied, 242 Ala. 485, 7 So.2d 28 (1942) ("The rule in our state is that an allegation in an indictment which is but mere surplusage may be disregarded — it is immaterial for any purpose. The exception to this rule . . . is that if the allegation [constituting surplusage] 'is descriptive of the fact or degree of the crime, or is material to the jurisdiction' it must be proved as alleged.") Cauley v. State, 14 Ala. App. 133, 135, 72 So. 271 (1916) ("The statute makes the stealing of a cow, regardless of the value of the cow, grand larceny . . ., and in such case it is not necessary to allege or prove value. . . . Therefore the allegation 'of the value of thirty-five dollars,' not being descriptive of the offense, was properly regarded as surplusage, and proof thereof was not necessary.").
 "There is also authority that even unnecessary allegations must be proven. Weatherly v. State, 33 Ala. App. 127, 131, 30 So.2d 484 (1947) [T]he law is, as has been universally held, if an indictment contains an unnecessary averment, yet being alleged, it becomes necessary for the State to prove it, and there should be no conviction without such proof. Gilmore v. State, 99 Ala. 154, 13 So. 536, 537.'); Hayes v. State, 33 Ala. App. 178, 181, 31 So.2d 306 (1947) ('It has been definitely settled that even an unnecessary allegation, but which is descriptive of the identity of that which is legally essential to the charge, . . . must be proven as laid.'). See also Johnson v. State, 35 Ala. 363, 366 (1890), and cases cited therein.
 " 'However, our Alabama case law is clear that there must be a material variance between indictment and proof before a conviction will be overturned for that reason.' Ex parte Collins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original) (no material variance between indictment charging theft of heat pump with a certain serial number and proof showing that serial number had been removed and could not be ascertained). In Collins, supra, our Supreme Court reversed the judgment of this Court in Collins v. State, 385 So.2d 993, 998
(Ala.Cr.App. 1979), where we relied on the principle that 'if an indictment contains an unnecessary averment, nonetheless it becomes necessary for the state to prove it. . . .'
 "More recently, our Supreme Court held that there was no material variance *Page 1168 
in an indictment charging a capital murder for hire between an allegation that the accused co-signed a promissory note with the actual killer at the Citizen's Bank of Winfield and proof that the note was signed at the Winfield State Bank.
 " 'Likewise, in the instant case, the fact that Lundy had business transactions at both banks does not mean that the bank's identity is material; thus, proof that the subject note was signed at a bank different from the bank identified in the indictment does not constitute a material variance. The gravamen, or substance, of the charged offense is that Lundy and Goodson entered into a contract whereby, in consideration of Goodson's agreement to kill Lundy's wife, Lundy agreed to kill Lundy's wife, Lundy agreed to co-sign Goodson's bank note as surety. While the requisite elements of proof under this indictment include the existence of a contract for hire to kill, the identity of the institution with which the financial arrangement was made is not one of those elements.
 " 'Compliance with the due process mandate of notice does not require that the defendant be furnished the name of the bank where he co-signed the note. Thus, the inclusion of the name of the bank within the language of the indictment is surplusage. Because the identification of the bank was not a material allegation, proof of the correct name of the bank did not constitute a material variance.' Lundy v. State, [Ms. 86-698, January 15, 1988] [539] So.2d [322, 324] (Ala. 1988).
 "Applying similar considerations to this case leads this court to the conclusion that there was no material variance between the complaint charging DUI on a public highway and proof showing DUI on private property. The gravamen, or substance, of the charged offense is that the defendant was driving while intoxicated. While the requisite elements of proof under this complaint include proof that the defendant was driving a motor vehicle, the location of that driving is not one of those elements. 'Under the terms of this [DUI] statute, enacted by the Legislature in the exercise of the police power, the place of operation is not made an element of the offense.' O'Reilly v. State, 235 Ala. 328, 329, 179 So. 263
(1938).
 "As indicated above, the inclusion of the location of the driving within the language of the indictment is surplusage. Because the identification of that location was not a material allegation, proof of the correct location of the driving did not constitute a material variance. House v. State, 380 So.2d 940 (Ala. 1979) (no material variance in regard to capacity in which assault victim was employed, where indictment alleged deputy sheriff and proof showed jailer)." Lunceford, Slip op. at 9-13.
For these reasons, we decline to follow the holding ofThornton that "if the state elects to prosecute a crime occurring at a particular time [by a specific allegation of time in the indictment], then the state is entitled to a conviction only upon establishing that fact by the evidence."Thornton, 480 So.2d at 36. While we cannot state that the result reached by this court in Thornton is incorrect, we do find that the broad statement of the above principle is misleading and is hereby overruled to the extent that it conflicts with Brown v. City of Tuscaloosa, supra; McDade, supra; and this opinion.
"The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled." House, 380 So.2d at 942. "Not every variance is fatal. Berger v. United States, 295 U.S. 78,55 S.Ct. 629, 79 L.Ed. 1314 (1935). Reviewing a claim of variance requires use of a two step analysis: (1) was there in fact a variance between the indictment and proof, and (2) was the variance prejudicial." United States v. McCrary, 699 F.2d 1308,1310 (11th Cir. 1983). "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial *Page 1169 
rights' of the accused." Berger, 295 U.S. at 82,55 S.Ct. at 630. "Variance from the indictment is not always prejudicial nor is prejudice assumed." United States v. Womack,654 F.2d 1034, 1041 (5th Cir. 1981), cert. denied, 454 U.S. 1156,102 S.Ct. 1029, 71 L.Ed.2d 314 (1962). The determination of whether a variance affects the defense will have to be made based upon the facts of each case. United States v. Pearson, 667 F.2d 12,15 (5th Cir. 1982). Here, the defendant has failed to show any prejudice which resulted from the variance or that any substantial right has been affected. However, we do not hold that a variance such as that presented here might not be material and prejudicial in any other case. We simply hold that under the circumstances of this case, the variance was not prejudicial and hence not fatal.
A word of caution is appropriate at this point, for where there exists a variance between the time of the crime as alleged in the indictment and the proof at trial, the defendant will not have a difficult time establishing surprise or prejudice to his defense.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.