385 So.2d 1005 (1980)
Ex parte Floyd Leldon COLLINS
(Re Floyd Leldon Collins v. State of Alabama).
79-191.
Supreme Court of Alabama.
June 6, 1980.
*1006 Carl E. Chamblee, Birmingham, for petitioner.
Charles A. Graddick, Atty. Gen., J. Anthony McLain, Sp. Asst. Atty. Gen., for respondent.
PER CURIAM.
We granted certiorari in this case to review the Alabama Court of Criminal Appeals' decision affirming the conviction of petitioner, Floyd Collins, for buying, receiving or concealing one G. E. Weathertron five-ton capacity heat pump valued at $1,162. The appellate court held, inter alia, that even though the petitioner was subjected to two trials, his constitutional right to be free from being twice placed in jeopardy had not been violated. For the reasons stated below, we reverse.
We will recite those facts pertinent to our decision. A more detailed statement of facts is contained in the Court of Criminal Appeals' opinion. Collins v. State, 385 So.2d 993 (Ala.Cr.App.1979). Petitioner was first indicted by the Cullman County Grand Jury on January 10, 1978. He was charged in a two-count indictment with grand larceny and with buying, receiving, or concealing "one General Electric Weathertron 5 ton capacity heat pump, beige in color, Model No. BGWA860RLB, Serial No. XXXXXXXXX, of the value of $1,162, the personal *1007 property of The Scheafer Company, Inc., a corporation, against the peace and dignity of the State of Alabama." The heat pump was taken from the grounds of a Mormon Church. Petitioner was charged with grand larceny in count one; he was charged with buying, receiving or concealing the same heat pump in count two.
A jury was impaneled and the first trial was commenced May 22, 1978. Three State's witnesses testified at petitioner's first trial before the proceedings were terminated. During the course of these witnesses' testimony, the prosecutor discovered that between the time the heat pump was taken from the Mormon Church and recovered by the authorities the serial number on it had been removed. Two heat pumps had been taken from the grounds of the Mormon Church. Because the serial number had been removed from the recovered unit, no State's witness was able to verify which of the two stolen heat pumps had been recovered.
The prosecutor requested that petitioner consent to an amendment of the indictment striking out the serial number; this petitioner refused to do. The prosecutor moved the trial court to dismiss the prosecution as per Code 1975, § 15-8-91, which motion the trial court granted. The petitioner was then reindicted. The second indictment duplicated the wording of the first except that the serial number of the heat pump was excluded and the spelling of "The Schaefer Company" was changed.
Over petitioner's objection that trying him again was unconstitutional because it violated the double jeopardy clauses of both the Alabama and United States Constitutions, petitioner was tried and convicted. He appealed, raising various points of error, including his constitutional claim. The Court of Criminal Appeals affirmed the conviction. Because we find that petitioner was unconstitutionally twice placed in jeopardy for the same offense, we pretermit discussion of petitioner's other specifications of error.
The Alabama Constitution prohibits a person from being twice placed in jeopardy for the same offense. Const. of Ala. of 1901, Art. I, § 9. Alabama courts have held that jeopardy attaches when a jury has been impaneled and sworn, and the indictment has been read to the jury. Anthony v. State, 49 Ala.App. 462, 273 So.2d 222 (1972). In Anthony a jury had been impaneled and sworn; however, before the indictment had been read to the jury, before defendant had made any plea to the indictment in the presence of the jury, and before there had been an opening statement, a mistrial was declared. The appeals court held that jeopardy had not attached. See also Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973); Garsed v. State, 50 Ala. App. 312, 278 So.2d 761 (1973).
The United States Constitution also prohibits a person from being twice placed in jeopardy. U.S.Const., Amend. V. The double jeopardy clause of the Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1973). In Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), the Supreme Court held that the same constitutional standards of determining when jeopardy attaches must apply equally in both federal and state courts. In Crist, the court held that jeopardy attaches when the jury is impaneled and sworn. We are constitutionally mandated to follow this rule.
It is clear that jeopardy had attached in the case at bar, under either the standard developed in our own Alabama cases, or under the standard constitutionally mandated by Crist. The jury had been impaneled and sworn, and the indictment had been read. In fact, three witnesses testified before the proceedings were terminated. However, simply because jeopardy had attached does not prohibit subsequent proceedings against an accused. Where jeopardy has attached in a trial, the accused may be subject to a second trial where the prosecutor demonstrates a manifest necessity for terminating the first trial. Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); United States v. *1008 Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); cf. Woods v. State, 367 So.2d 982, 984 (Ala.1978).
The difficult point for all courts to determine is under what circumstances it is permissible for the state to try an accused more than once without violating the accused's constitutional right to be free from being twice placed in jeopardy. Obviously, when an accused is placed on trial, the trial runs to completion, the accused is convicted, and the conviction on appeal is reversed because of error in the proceedings, the accused is subject to a second trial without violating his constitutional rights. Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950). Just as obviously, when an accused is placed on trial, the trial runs to completion, and the accused is acquitted, the accused is no longer subject to a second trial without violating his constitutional rights. Kepner v. United States, 195 U.S. 100, 126-28, 24 S.Ct. 797, 803-04, 49 L.Ed. 114 (1904); United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). This case falls in the not so obvious middle ground.
In Arizona v. Washington, supra, the court explained the standard to be employed to determine whether trial proceedings had been terminated due to some "manifest necessity." Mr. Justice Stevens, writing for the court, stated:
"The words `manifest necessity' appropriately characterize the magnitude of the prosecutor's burden. For that reason Mr. Justice Story's classic formulation of the test has been quoted over and over again to provide guidance in the decision of a wide variety of cases. Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word `necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a `high degree' before concluding that a mistrial is appropriate." 98 S.Ct. at 830-31.
In the case at bar the trial was terminated because of an erroneous indictment in accordance with Code 1975, §§ 15-8-90, -91. These statutory provisions provide, respectively, that where there exists a variance, defined as an incorrect description of property or as an incorrect description of a person, in the indictment, the indictment may be amended if the accused consents, or if the accused refuses to consent, the prosecution may be dismissed at any time before the jury retires as to the count in the indictment to which the variance applies, and the court may order another indictment to be sought at a subsequent time.
In the instant case, the petitioner refused to consent to an amendment of the indictment. The prosecutor, therefore, moved to dismiss the indictment, the motion was granted, and the prosecutor obtained a second indictment. Even though the prosecutor's actions were consistent with the statutory scheme, the dismissal of the indictment must have been due to some "manifest necessity" before the petitioner is constitutionally subject to retrial. Arizona v. Washington, supra; United States v. Tateo, supra, Wade v. Hunter, supra; Gori v. United States, supra. We hold the dismissal was not due to "manifest necessity."
As the Court of Criminal Appeals correctly points out, there was unquestionably a variance between the indictment and the proof offered. But whether the variance was so material that had the petitioner been convicted on the indictment as first drawn, his conviction would be due to be reversed, is another determination. Apparently, the Court of Criminal Appeals was of the opinion that the variance would render any conviction erroneous because while the Court of Criminal Appeals said that the State could prove a prima facie case, that court also said that where a particular kind of property is specifically described in an indictment, it must be proved as laid, citing *1009 Bell v. State, 364 So.2d 420 (Ala.Cr.App. 1978) and Lee v. State, 20 Ala.App. 334, 101 So. 907 (1924). Thus, the Court of Criminal Appeals held that since the State could not prove the indictment as laid, any conviction based upon the indictment would fail.
We are not so convinced. The accused has a valued right to have his case completed before a properly empaneled tribunal. Wade v. Hunter, supra. We have previously noted the Court of Criminal Appeals' finding that the State could have presented a prima facie case to the jury. What the Court of Criminal Appeals may have overlooked is that the jury may have acquitted the accused after deliberation concerning the State's case. The petitioner was entitled to that opportunity, United States v. Ball, 163 U.S. 662, 669-70, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1890), unless there was a "manifest necessity" for terminating the initial proceedings, or unless the ends of public justice would otherwise be defeated. United States v. Perez, 9 Wheat. 579, 580, 6 L.Ed. 165 (1820).
In the case at bar there was no manifest necessity for dismissing the prosecution. True, there was a variance between the indictment and proof. However, our Alabama case law is clear that there must be a material variance between indictment and proof before a conviction will be overturned for that reason. See e. g., House v. State, 380 So.2d 940 (Ala.1979) (no material variance between indictment which charged defendant with assaulting Edward Wilburn, engaged "in the active discharge of his lawful duty or duties as deputy sheriff for Morgan County, Alabama" and proof which showed that Wilburn was in fact engaged in his lawful duties as a jailer at the time of the assault), and Dailey v. State, 374 So.2d 414 (Ala.Cr.App.1979) (no material variance between forgery indictment, in which number of check was described as "1881," and proof that check was numbered "1886"). Since there was no material variance between the indictment and proof in the case at bar, there was no manifest necessity for dismissing the proceedings. By dismissing the initial proceedings and making the petitioner stand trial again, the State violated petitioner's constitutional right to be free from being twice placed in jeopardy.
We are not persuaded by the holding of the Court of Criminal Appeals that the second indictment did not place the petitioner in double jeopardy because it alleged a separate and distinct offense. As we noted, the second indictment duplicated the wording of the first, except for removing the serial number and changing spelling. It therefore alleged the identical offense; the same transaction.
We are aware that the prosecutor's actions were statutorily authorized. However, the statutory scheme, as applied to the facts of this case, is not consistent with the principles laid down in Crist and its predecessors. Crist and its predecessors hold that a prosecution cannot be constitutionally terminated unless there is a manifest necessity for doing so. We have shown there is no fixed standard for determining when a manifest necessity arises, but clearly dismissing a prosecution because an indictment contains any variance, no matter how slight, as the statute authorizes, is inconsistent with the manifest necessity doctrine as that doctrine is stated in the federal cases.
We emphasize that the decision we reach today is based upon the policy of recognizing that an accused's valued right to have his trial completed by a particular tribunal will not be subordinated to the public's interest in fair trials designed to end in just judgments unless there is a manifest necessity for determining the first trial; and it is additionally based upon the policy of holding litigants on both sides of a criminal trial to standards of responsible professional conduct in the clash of an adversary criminal process. As Mr. Justice White recognized in his dissent in Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973);
"* * * it must be remembered that the inability to amend an indictment does not come into play, and a mistrial is not necessitated, unless an error on the part of the State in the framing of the indictment is committed. Only when the indictment *1010 is defectiveonly when the State has failed to properly execute its responsibility to frame a proper indictmentdoes the State's procedural framework necessitate a mistrial.
"Although recognizing that `a criminal trial is, even in the best of circumstances, a complicated affair to manage,' ibid., the Court has not previously thought prosecutorial error sufficient excuse for not applying the Double Jeopardy Clause. In Jorn [United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)], for instance, the Court declared that `unquestionably an important factor to be considered is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process,' id., at 485-486, 91 S.Ct., at 557, and cautioned. `The trial judge must recognize that lack of preparedness by the Government ... directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee.'" Id., at 486, 91 S.Ct. at 557. 93 S.Ct. at 1076.
We hold that the circumstances presented before us do not permit retrial under the double jeopardy standards upon which we rely. This cause is thereby due to be, and is hereby, reversed and remanded to the Court of Criminal Appeals for decision consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., and ALMON and SHORES, JJ., dissent.
BLOODWORTH, J., not sitting.
TORBERT, Chief Justice (dissenting):
I dissent for the reasons stated by the Court of Criminal Appeals in its opinion affirming the conviction of petitioner Collins.
ALMON and SHORES, JJ., concur.