BURKE, Judge.
James R. Hall appeals from his conviction for second-degree theft of property, a violation of § 13A-8-4, Ala.Code 1975, and his resulting sentence of two years’ imprisonment; the sentence was suspended, and Hall was placed on two years’ supervised probation.
On February 20, 2014, Hall was indicted by the Houston County Grand Jury for one charge of second-degree theft of property. The indictment read as follows:
“The Grand Jury of said county charge that, before the finding of this indictment, JAMES R. HALL, whose name is otherwise unknown to the Grand Jury, did knowingly obtain or exert unautho.-rized control, over UNITED STATES CURRENCY, the property of DISABLED AMERICAN VETERANS CHAPTER 87, of the value which exceeds $500.00 but does not exceed $2500.00, with the intent to deprive the owner of said property, in violation of Section 13A-8-4 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
(C. 8.) '
At trial, the State introduced the following evidence. Jim Crowe, the junior vice commander of the Disabled American Veterans (“DAV”), Chapter 87, testified that there are four elected positions in the organization, which include: commander, senior vice commander, junior vice commander, and treasurer! Crowe stated that Hall was sworn in as commander in January 2013. In February 2013, Kerry Edwards assumed the , position of treasurer. Crowe testified that it was normal procedure at general meetings that every expenditure be preapproved and that occasionally there would not be preapproval for things such as emergency events. According to Crowe, the DAV required that all checks be signed by the commander and the treasurer. In March 2013, Crowe was reviewing the checkbook and the registers and noticed a check had been written to Hall in the amount of $1,500. The check had been countersigned by Edwards. Crowe stated that the expenditure had not been preapproved by the DAV chapter at the meeting. Crowe claimed that the matter was discussed at one of the meetings, at which Hall made the comment that he had solicited a donation on behalf of the DAV from the mayor that “was for [Hall’s] expenses in his performance of his duties.” (R. 54.) Crowe told Hall at the meeting that he would not be allowed to do that because the check had been made out to the DAV, and became property of the DAV;: thus, the money must be distributed in accordance with the chapter’s bylaws and constitution. The cheek was then deposited into the DAV’s bank account. The State introduced a copy of a check written from the mayor to the DAV in the amount of $1,500 that was dated March 20, 2013, which was deposited into the DAV’s bank account on March 22, 2013. The State also introduced a copy of a check written Hall foi; $1,500 that was dated March 28, 2013, which indicated that it had been cashed from the DAV’s account. Hall and Edwards were the two signatures on the check made out to Hall.
Crowe testified that the officers of the DAV swear to uphold the bylaws of the DAV, which state, among other things, that “[e]ach member agrees that they will not receive any funds or other things of value because of services rendered or to be rendered to the chapter, as a member or officer or otherwise, unless the samé is expressly authorized by th[e] chapter.” (R. 58-59.) Therefore, Crowe claimed, Hall’s taking the $1,500 check made out to him was contrary to the above-referenced section of the bylaws. Crowe also testified that the bylaws state that the com *1280 mander “must ensure the safeguarding óf funds, properties or other assets against unauthorized loss or use” and “ensure all disbursements of funds- are properly approved in accordance with the chapter constitution and bylaws.” (R. 59-60.) Finally, Crowe claimed that the bylaws provide that if an individual accepts any elected or appointed office in the DAV, that individual agrees that “[his] services will be rendered gratuitously and that [he] will not be entitled to reimbursement for any sums advanced, incurred or spent unless expressly authorized by the commander at a regular chapter meeting, and no chairperson, committee person, [or] chapter officer will have the power or authority to incur any expense or obligation or bind the chapter unless by prior expressed approval of [the] chapter, evidenced by a majority vote at a regular meeting and documented in the meeting.” (R. 60.) Therefore, Crowe claimed, Hall’s action of signing a DAV check made payable to himself was not done with the knowledge and authorization of the other executive members and, thus, was not done in accordance with the proper procedure found in the bylaws of the DAV chapter.
Crowe testified that Hall was given the opportunity to provide receipts, documentation, or itemization of any expenses that he was being reimbursed for, and he failed to do so. On June 17, 2013, in a letter from the executive members, Hall was asked to resign his position as commander and he was asked to reimburse the $1,500. Hall still failed to provide receipts or documentation of any expenses to be reimbursed.
After the State rested its case, defense counsel made a motion for a judgment of acquittal and argued, among other things, that there was a fatal variance between the indictment, which alleged theft of currency, and the evidence, which established that a check had been allegedly improperly taken. The court denied the motion for a judgment of acquittal and reserved the issue regarding a fatal variance to be discussed after the defense presented its case.
Kenny Edwards testified on behalf of Hall. Edwards testified that he was serving as treasurer of the DAV chapter at the time of the incident. He remembers that at the March 2013 meeting, Hall told the membership that he had received a check from the mayor and told them what it was going to be used for. Some time after the meeting, Edwards prepared a check payable to Hall. Edwards admitted that, although the expenditure was discussed at the meeting, it was not approved at the meeting; however, he stated that he contacted the mayor and knew that the money was supposed to be used to help the homeless veterans.
The defense rested its case. The State offered the testimony of Curtis Stephens, an officer with the Dothan Police Department, as rebuttal. Officer Stephens testified that he investigated the matter and that he had spoken with Crowe, the mayor, and Edwards, and that he had not heard that the funds were to be used directly or indirectly for homeless veterans until trial proceedings began. The State then rested its case.
Defense counsel renewed the motion for a judgment of acquittal, partially based on the ground that the evidence did not establish that Hall knowingly obtained or exerted unauthorized control over currency. The circuit court denied defense counsel’s motion. The jury returned a verdict of guilty of second-degree theft of property.
On appeal, Hall’s sole contention is that the circuit court improperly denied his motion for a judgment of acquittal because, he says, there was a fatal vari- *1281 anee between the indictment and the evidence produced at trial. Specifically, Hall argues that the indictment alleged that he was guilty of theft of currency, and that the evidence produced at trial indicated that there had been a theft of a check.
“A fatal variance between allegations in an indictment and proof of those allegations presented at trial exists when the State fails to adduce any proof of a material allegation of the indictment or where the only proof adduced is contrary to a material allegation in the indictment. Johnson v. State, 584 So.2d 881, 884 (Ala.Crim.App.1991). ‘Alabama law requires a material variance between the indictment and the proof adduced at trial before a conviction will be overturned. Ex parte Collins, 385 So.2d 1005 (Ala.1980).’ Brown v. State, 588 So.2d 551, 558 (Ala.Crim.App.1991).”
Bigham v. State, 23 So.3d 1174, 1177 (Ala.Crim.App.2009).
“ ‘The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled.’ House [v. State ], 380 So.2d [940] at 942 [ (Ala.Crim.App.1989) ]. ‘Not every variance is fatal. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Reviewing a claim of variance requires use of a two step analysis: (1) was there in fact a variance between the indictment and proof, and (2) was the variance prejudicial.’ United States v. McCrary, 699 F.2d 1308, 1310 (11th Cir.1983). ‘The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to “affect the substantial rights” of the accused.’ Berger, 295 U.S. at 82, 55 S.Ct. at 630. “Variance from the indictment is not always prejudicial nor is prejudice assumed.’ United States v. Womack, 654 F.2d 1034, 1041 (5th Cir.1981), cert. denied, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982). The determination of whether a variance affects the defense will have to be made based upon the facts of each case. United States v. Pearson, 667 F.2d 12, 15 (5th Cir.1982).”
Smith v. State, 551 So.2d 1161, 1168-69 (Ala.Crim.App.1989).
Hall is correct in his assertion that the Alabama Supreme Court has previously held that “[a] fatal variance exists between an indictment alleging the theft of ‘lawful currency’ and evidence showing the theft of several chécks. ‘[W]hen in this case the charge involved “currency” and the evidence established “checks,” this was a fatal variance.’ Ex parte Airhart, 477 So.2d 979, 980-81 (Ala.1985); Airhart v. State, 388 So.2d 211, 212-13 (Ala.Crim.App.), cert. quashed, 388 So.2d 213 (Ala.1980)(proof that a check was embezzled is insufficient to satisfy the allegation of an indictment charging the embezzlement of ‘lawful currency’).” Delevie v. State, 686 So.2d 1283, 1284 (Ala.Crim.App.1996). This Court noted the following in Delevie:
“ ‘ “Obviously, a check is not money,” and in an indictment, an allegation of conversion of money will not cover a conversion of a check. Carr v. State, 104 Ala. 43, 16 So. 155, 160 (1894). See also United States v. Fernando, 745 F.2d 1328, 1330 (10th Cir.1984)(“[S]tate courts have interpreted ‘money’ ... as not including checks.”). “The word ‘dollars’ imparts to the common understanding, the meaning of a thing of value,” and the indictment must “designate the kind of dollars stolen.” Leonard v. State, 115 Ala. 80, 22 So. 564, 565 (1897). “A *1282 check is a written order, or request, for the payment of money, addressed to a bank or banker.” Thompson v. State, 49 Ala. 16, 18 (1873). “A check is essentially commercial paper, possessing the attributes of a contract, and certain characteristics of property, and it is equivalent to a promise to pay upon the part of the drawer. It is executory in its nature.” Scott v. State, 38 Ala.App. 328, 330, 33 So.2d 390 (1948). “A check is a contract.” Gooch v. State, 249 Ala. 477, 479, 31 So.2d 776 (1947).

".....

“ ‘It is fundamental that an indictment “must state the facts constituting the offense in ordinary and concise language, ... in .such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.” Alabama Code 1975, § 15-8-25. “Indictments cannot be aided by intendr ment, but must positively and explicitly state what the prisoner is called upon to answer.” State v. Seay, 3 Stew. 123,130-31 (Ala.1830).’
“Shubert v. State, 488 So.2d 44, 46-47 (Ala.Crim.App.1986); See also Henderson v. State, 520 So.2d 169 (Ala.Crim.App.1987).”
Delevie, 686 So.2d at 1286.
However, more recently,, the Alabama Supreme Court has held as follows regarding the issue of the sufficiency of an indictment charging the offense of theft of a certain monetary amount but not identifying the medium of exchange:
“In reaching its conclusion in Shubert [v. State, 488 So.2d 44 (Ala.Crim.App.1986),] the Court of Criminal Appeals relied upon precedent applicable to the description of property taken in an indictment charging a common-law theft, which included larceny, embezzlement, and false pretenses, and applied that precedent to the description of property taken when charging theft of. property, an offense defined in § 13A-8-1 et seq., Ala.Code 1975. In an indictment charging common-law theft of a certain dollar amount of funds, the medium of exchange when describing the property taken was material because the medium of exchange determined the value of the funds taken. For example, in 1844, the value of five gold coins did not equal the value of five silver coins; therefore, in 1844, to adequately describe the property in an indictment charging common-law theft of an amount of funds the medium of exchange had to be described to determine the value of the funds taken. See State v. Murphy, 6 Ala. 845, 851 (1844)(requiring that the denomination and number of coins be specified in the indictment). Hence, when pleading common-law theft of a certain amount of funds, describing the medium of exchange was material, and, if the indictment did not include the medium ■ of exchange, the indictment was legally insufficient.
“In the 21st century, however, the various mediums of exchange represent the same standard of value for the dollar. The medium of exchange involved — whether cash, check, debit-card transaction, credit-card transaction, electronic funds, etc. — does not determine the value of the amount of funds. Whether the dollar amount is in the form of cash, check, multiple-party check, credit-card transaction, debit-card transaction, or electronic funds, businesses, banks, and financial institutions recognize that the dollar has a standard value; consequently, the medium .of exchange does not determine the value of a monetary amount. This ac *1283 ceptance of the various mediums of exchange as interchangeable and representing equivalent values for the dollar makes describing the medium of exchange immaterial when describing the funds over which a defendant allegedly has exercised unauthorized control. The material concern is the monetary amount. Therefore, we conclude that an indictment charging the offense of theft of a certain monetary amount, in violation of one of the provisions of § 13A-8-1 et seq., Ala.Code 1975, but that does not identify the medium of exchange is legally sufficient. Section 15-8-25, Ala. Code 1975, provides:
“‘An indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the judgment.’
See also Rule 13.2, Ala. R.Crim. P. (providing that an indictment ‘shall be a plain concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with a degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment’). It is unreasonable to conclude that in the 21st century a defendant charged in an indictment with exercising unauthorized control over a certain monetary amount would not know what is intended or that a court could not pronounce judgment on conviction for theft of said amount, if the medium of exchange is not designated. Therefore, we hold that the requirements of § 15-8-25, Ala.Code 1975, are satisfied even if the indictment stating the monetary amount over which the defendant is allegedly exerting unauthorized control does not identify the medium of exchange. Identification of the monetary amount alone provides the defendant adequate notice of the theft to prepare his or her defense and to avoid double jeopardy.”
State v. Roffler, 69 So.3d 225, 229-31 (Ala.2010).
Although the issue in Roffler concerned the sufficiency of the indictment when a medium of exchange was not listed, we find that the reasoning in Roffler and the Supreme Court’s subsequent findings are relevant and binding when discussing whether there is a fatal variance between the indictment and the evidence presented at trial. Because the Supreme Court in Roffler found that, in the present day, the medium of exchange is immaterial when describing funds over which the defendant has allegedly exercised control and that the “identification of the monetary amount alone provides the defendant adequate notice of the theft to prepare.his or her defense,” see Roffler, 69 So.3d at 230, we can no longer conclude that there is a material variance so as to “affect the substantial rights” of the accused where the indictment alleged theft of United States currency and the proof at trial established theft of a check. Therefore, although there was a variance between the facts alleged in Hall’s indictment and the proof produced at trial, under Roffler, the variance was not a material variance that affected his substantial rights or prejudiced his ability to prepare his defense.
Accordingly, based on the foregoing, the judgment of the circuit court is due to be affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.