WINDOM, Presiding Judge.
Jarvon Dominque Cubitt appeals his conviction for first-degree theft of property, see § 13A-8-3, Ala. Code 1975, and his sentence of two years in prison; that sentence was suspended and Cubitt was ordered to serve three years of supervised probation.
*497 Best Buy Store, Inc. ("Best Buy"), created the Best Buy Reward Zone Program ("Reward Zone") to reward repeat customers with discounts on future purchases. As part of the Reward Zone, customers were awarded one Reward Zone point for every dollar they spent at Best Buy. The Reward Zone points do not exist until they are created by the customer when the customer adds those points to his or her Reward Zone account. Customers may create the points and add them to the their account at the point of purchase or later on a computer by providing evidence of a receipt as proof of the purchase amount. Once the points are created by the customer, they are not transferable, they have no cash value, and they must be redeemed for a discount certificate to be useful. For every 250 points a customer accumulates, the customer earns a certificate entitling him or her to a discount of $5 off of a purchase at Best Buy. As part of the "e-learning" training that Best Buy employees receive, the employees are informed that they "are not supposed to [take] customers' points." (R. 239.) Further, Best Buy reserves the right to alter or terminate the Reward Zone program at any time.
Cubitt was a sales associate at a Best Buy Store in Opelika, and, as an employee and customer of Best Buy, he participated in various discount programs such as the Path to Excellence Program, which rewarded employees who performed well, and the Reward Zone Program. While working for Best Buy, Cubitt devised a scheme in which he collected customers' receipts and entered them into his Reward Zone account so as to take credit for other people's purchases and to create points in his account earned by other people. Through the practice of using customers' receipts to generate points in his account, Cubitt accumulated 262,500 points, which he later redeemed for 1,050 discount certificates equaling $5,250 in discounts. With those discount certificates, Cubitt bought various items from Best Buy at greatly reduced prices, including a refrigerator for which he paid two dollars.
After Cubitt bought the refrigerator, Elroid Lights, the market-asset-protection manager at Best Buy, interviewed him regarding his purchases. During the interview, Cubitt detailed the scheme he had used in which he took credit for customers' purchases to accumulate Reward Zone points. Cubitt explained that he had used the Reward Zone points to get discount certificates that he, then, used to purchase items from Best Buy at reduced prices. After the interview, Lights contacted local law enforcement to report Cubitt's actions.
Based on Cubitt's scheme, the State indicted him as follows:
"The Grand Jury of Lee County charges that before the finding of this Indictment, Jarvon Dominque Cubitt, alias Jarvon D. Cubitt, whose true Christian Name is otherwise unknown to the Grand Jury, did knowingly obtain, or exert unauthorized control over lawful United States Currency, the exact amount unknown to the Grand Jury, the property of Best Buy Company Inc., d/b/a Best Buy #662, having a value in excess of Two Thousand Five Hundred Dollars ($2500.00), with the intent to deprive the owner of said property, in violation of § 13A-8-3, of the Code of Alabama, against the peace and dignity of the State of Alabama."
(C. 96)(emphasis added.)
Before trial, Cubitt filed a motion to dismiss the charge against him. In his motion, he argued, among other things, that nothing was stolen from Best Buy, that the Reward Zone points he had obtained had been abandoned by customers, and that the Reward Zone points belonged *498 to the customers as opposed to Best Buy. The State responded that Reward Zone points are currency that have value and that Cubitt exerted unauthorized control over those points. Later, at trial, Cubitt argued that the indictment against him was defective and that there was a material variance between the indictment and the State's evidence. Cubitt explained that the indictment charged him with taking lawful United States currency from Best Buy but proved that he took Reward Zone points from customers. The State, on the other hand, argued that there was no material variance but this time asserted that the discount certificates Cubitt acquired using the Reward Zone points were currency or its equivalent and that Cubitt unlawfully obtained those certificates from Best Buy. The circuit court allowed the parties to file post-trial briefs on the issue. In his brief, Cubitt reiterated his argument that there was a material variance between the indictment and the proof at trial. This time, the State argued that Reward Zone points and the discount certificates were the property stolen by Cubitt and that those items have monetary value when they are redeemed. It asserted that "the use of the RewardZone program (earning points, redeeming for certificates, using certificates as payment at checkout) is a form of currency." (C. 115.) In the alternative, the State moved to amend the indictment to state that Cubitt "did knowingly obtain or exert unauthorized control over the property at Best Buy Inc, to-wit: RewardZone points and certificates and having a monetary value in an amount exceeding Two Thousand Five Hundred Dollars ($2,500.00)." (C. 117.)
The circuit court held:
"The Indictment in this case charges that [Cubitt] exercised unauthorized control of United States Currency. However, the evidence at trial established that [Cubitt] took Reward Zone points from customers and used those customers to get certificates in which [Cubitt] was able to redeem for discounts. While there was no evidence at trial that [Cubitt] actually controlled any currency, based on the case law actual possession of currency is not necessary for conviction. The Court finds that a variance exists between the wording of the Indictment and the proof of evidence at trial. However, this variance is not material or fatal. [Cubitt] claimed points from Best Buy customers and used those points to eventually claim monetary discounts in purchasing Best Buy Products. These actions fall within the offense as described in the wording of the Indictment."
(C. 124-25.) It then found Cubitt guilty of first-degree theft of property.
On appeal, Cubitt argues, among other things, that there was a material variance between the indictment and the State's proof at trial because the indictment charged him with obtaining unauthorized control over lawful United States currency from Best Buy, but the State's evidence established that he took Reward Zone points from customers.
This Court has explained:
" 'A fatal variance between allegations in an indictment and proof of those allegations presented at trial exists when the State fails to adduce any proof of a material allegation of the indictment or where the only proof adduced is contrary to a material allegation in the indictment. Johnson v. State, 584 So.2d 881, 884 (Ala. Crim. App. 1991). "Alabama law requires a material variance between the indictment and the proof adduced at trial before a conviction will be overturned.
*499 Ex parte Collins, 385 So.2d 1005 (Ala. 1980)." Brown v. State, 588 So.2d 551, 558 (Ala. Crim. App. 1991).'
" Bigham v. State, 23 So.3d 1174, 1177 (Ala. Crim. App. 2009).
" ' "The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled." House [v. State], 380 So.2d [940] at 942 [ (Ala. Crim. App. 1989) ]. "Not every variance is fatal. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Reviewing a claim of variance requires use of a two step analysis: (1) was there in fact a variance between the indictment and proof, and (2) was the variance prejudicial." United States v. McCrary, 699 F.2d 1308, 1310 (11th Cir. 1983). "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." Berger, 295 U.S. at 82, 55 S.Ct. at 630. "Variance from the indictment is not always prejudicial nor is prejudice assumed." United States v. Womack, 654 F.2d 1034, 1041 (5th Cir. 1981), cert. denied, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982). The determination of whether a variance affects the defense will have to be made based upon the facts of each case. United States v. Pearson, 667 F.2d 12, 15 (5th Cir. 1982).'
" Smith v. State, 551 So.2d 1161, 1168-69 (Ala. Crim. App. 1989)."
Hall v. State, 203 So.3d 1277, 1281 (Ala. Cri m. App. 2015). "On the trial of a defendant charged with larceny, where there is some evidence descriptive of the stolen property which is substantially conformable to the description alleged in the indictment, and nowhere contradictory thereof, the identity of the stolen property is a matter addressed peculiarly and solely to the jury, and in such case there is no fatal variance between the allegata and the probata." Brooks v. State, 151 Ga.App. 384, 385, 259 S.E.2d 743, 744 (1979) (internal quotation marks and citations omitted).
Section 13A-8-2(a)(1)-(2), Ala. Code 1975, defines the relevant forms of theft of property as:
"(a) A person commits the crime of theft of property if he or she:
"(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property; [or]
"(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his or her property."
At trial, the State established that Cubitt devised a simple scheme to deceive Best Buy and to obtain merchandise at a greatly discounted price. Specifically, Cubitt used customers' receipts to create the appearance that he was entitled to produce points in his Reward Zone account, an account that was at all times in Best Buy's control and subject to change by Best Buy. Cubitt then used the points he created to obtain discount certificates indicating that he was entitled to discounts on the purchase price of items sold by Best Buy. After creating the illusion that he had earned discounts on merchandise sold by Best Buy, Cubitt purchased items at discounted prices. Thus, the State's evidence established that Cubitt "obtain[ed] by deception control over the property of another," i.e., greatly discounted Best Buy merchandise, in violation of § 13A-8-2(a)(2), Ala. Code 1975. The State, however, did *500 not charge Cubitt under § 13A-8-2(a)(2), Ala. Code 1975, with theft by deception. Rather, the State charged Cubitt under § 13A-8-2(a)(1), Ala. Code 1975, with knowingly obtaining or exerting unauthorized control over lawful United States currency from Best Buy. Consequently, there was a variance between the allegations in the indictment and the facts proven by the State at trial.
Further, this Court holds that the variance was material, i.e., prejudicial because it denied Cubitt sufficient notice of what property he was accused of stealing. Hall, 203 So.3d at 1277. The State charged Cubitt with theft of lawful United States currency from Best Buy, although Cubitt did not take any United States currency. See Black's Law Dictionary 465 (10th ed. 2014) (defining "United States currency" as "[c]urrency issued under the authority of the federal government"). Before trial, the State argued that Cubitt had obtained unauthorized control over Reward Zone points. The State's evidence at trial, however, indicated that Cubitt had created those points. Thus, after the State rested its case, it argued that Cubitt had obtained unauthorized control over discount certificates. The Court agreed with the State that Cubitt had obtained something of value. It, however, had trouble pinpointing what constituted the thing of value. Thereafter, in its post-trial brief, the State argued that the property over which Cubitt had obtained unauthorized control was both the Reward Zone points and the discount certificates. Thus, although the State alleged in the indictment that Cubitt had obtained unauthorized control over lawful United States currency, the State was able throughout the trial to amend the property allegedly stolen by Cubitt. Consequently, Cubitt was denied notice of the property he was on trial for stealing, and the variance between the allegations in the indictment and the proof at trial was material. Accordingly, Cubitt's conviction must be reversed.
For the foregoing reasons, the circuit court's judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Welch, Burke, and Joiner, JJ., concur. Kellum, J., not sitting.